UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------------X

HOWARD LONGMAN
individually, and on
behalf of others similarly situated,

        Plaintiff,                            **CLASS ACTION COMPLAINT**

        v.

WHIRLPOOL CORPORATION                  **JURY TRIAL DEMANDED**


        Defendant.

---------------------------------------------------------------X

    Plaintiff Howard Longman ("Plaintiff"), on behalf of himself and all others similarly situated, by the undersigned counsel, as and for the Complaint against Defendant Whirlpool Corporation ("Whirlpool" or "Defendant"), alleges the following based upon counsel's investigation of various publicly available sources, plaintiff's recollection and documentation regarding his personal experience, and analysis of the relevant components:

## INTRODUCTION

    1.    This class action arises from the sales and marketing by Whirlpool of defective French Door Bottom Mount refrigerators ("FDBM"). This case is brought for actual damages, equitable relief, including restitution, injunctive relief, and disgorgement of profits, and concerns Whirlpool's marketing and selling FDRM refrigerators while actively concealing a serious product defect eventually causing the entire refrigerator unit to stop cooling. The defect occurs due to impeded air flow in the freezer compartment which is caused by frost on the freezer evaporator. Corrosion then forms on the brass freezer thermistor impacting the thermistor performance allowing ice to accumulate on the evaporator. The defect eventually causes partial or complete loss of cooling capability for the refrigerator and freezer and is ultimately caused by pin hole sized

leaks in the refrigerator's evaporator [or sealed cooling system] resulting in low refrigerant charge (collectively, the "Defect").

2.   Whirlpool has been aware of the Defect since March 2014 as demonstrated by TSP", or internal technical service pointer, that Whirlpool provided to its dealers and service providers or dealers only ("TSP") which contained detailed information about the "Defect". A true and accurate copy of the March 2014 TSP is attached as Ex. 1. The March TSP was related to the Defect in the Class Refrigerators, as defined below, which included Plaintiff's model refrigerator. This March 2014 TSP demonstrates that Whirlpool had knowledge of cooling issues with certain FDBM refrigerator models.

3.   An additional TSP was released in October 2015 which was provided to Defendant's dealers and service providers only. This TSP informed dealers, and not the consumer public, about the Defect in many of the Class Refrigerators, including Plaintiff's refrigerator, and that "all refrigerators which manifested the Defect would require a new "evaporator assembly." A true and accurate copy of the October 2015 TSP is attached as Ex. 2 hereto.

4.   Whirlpool thus knew at the time it sold the Class Refrigerators, as defined below, that the Class Refrigerators contained the Defect.

5.   Whirlpool concealed this material knowledge of the Defect in its marketing, sale, and advertising of the Class Refrigerators on an ongoing basis.

6.   At all times during the Class Period, Whirlpool failed to take appropriate remedial action and continued to sell and market the Class Refrigerators even though it knew it was likely these units would not provide adequate cooling in the refrigerator as well as in the freezer units.

7. As a result of Whirlpool's false and misleading statements, and active ongoing concealment, Plaintiff and members of the proposed Class purchased the Class Refrigerators and were damaged thereby.

8. The Class Refrigerators include, but are not limited to the following Model Whirlpool, KitchenAid and Maytag brand named Refrigerators: 7MF2976AEM, KFIS29BBBL, KFIS29BBMS, KFIS29BBWH, KFIS29PBMS, KFIV29PCMS, MFT2976AEB, MFT2976AEM, MFT2976AEW, MFT2977AEB, MFT2977AEB, MFT2977AEM, MFT2977AEW, WRF989SDAB, WRF989SDAE, WRF989SDAF, WRF989SDAH, WRF989SDAM, WRF989SDAW, WRF9990SLAM containing Serial Numbers K217XXX- K33SXXX (the "Class Refrigerators" or "Refrigerators").

9. Plaintiff asserts claims on behalf of himself and the Subclass Members under the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1, et seq.) and for violations of the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"). Plaintiff also asserts claims on behalf of himself and the Class for fraudulent concealment/nondisclosure, express warranties, and breach of implied warranty of merchantability and unjust enrichment.

10. The Class and Subclass members could not have reasonably discovered the design errors, faulty materials, faulty workmanship, substandard installation, and manufacturing defects in the Refrigerators before buying them.

11. Had Whirlpool disclosed the Refrigerators' Defect, the Class and Subclass members would not have bought the Refrigerators, or would have paid lower prices for them

12. Plaintiff seeks actual damages, injunctive relief, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Class and

Subclass.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class (as defined below) are citizens of states different from Defendant and greater than two-thirds of the members of the Class reside in states other than the states in which Defendant is a citizen. This Court has jurisdiction over supplemental state law claims pursuant to 20 U.S.C. § 1367 and jurisdiction over all claims by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

14. Venue properly lies in the District of New Jersey pursuant to 28 U.S.C. § 1391(a) because Whirlpool has sufficient contacts with this District and sells its products to consumers through numerous dealers in the district so as to subject it to personal jurisdiction in the District. Moreover, a substantial part of the events and omissions to the Plaintiff give rise to the claims asserted in this Complaint occurred within this District as Plaintiff resides in this District.

## THE PARTIES

**Defendant**

15. Whirlpool Corporation manufactures and markets major home appliances. The Company provides principal products include laundry appliances, refrigeration, room air conditioning equipment, cooking appliances, dishwashers, and mixers and other small household appliances. Whirlpool serves customers worldwide. At all times relevant, Whirlpool's principal place of business was and is located in Benton Harbor, Michigan and its state of incorporation is Delaware.

**Plaintiff**

16. Plaintiff Howard Longman ("Plaintiff") is a citizen of New Jersey. Plaintiff purchased a KitchenAid FDBF refrigerator, model number KFIV29PCMS00, serial number K32019233 for personal, and family use (the "Refrigerator"), from Karl's Appliances in West Caldwell, New Jersey on April 15, 2014 for $3,065.

17. Plaintiff began experiencing the defect not long after purchase and informed Whirlpool's service representative from Dan Marc Appliance ("Dan Marc"), the local authorized service provider for Whirlpool.

18. In or around July 2016, Dan Marc replaced the Refrigerator's evaporator unit and assured Plaintiff that the problem with the refrigerator was resolved.

19. Notwithstanding the representation by Whirlpool that the issue was resolved, in or around May 2022, water began to leak from the Refrigerator and the icemaker stopped making ice. On May 18, 202 Dan Marc performed a diagnosis on the Refrigerator noting on the invoice: "Leaking water into the floor of the RC and front build up "on the back wall and also under the FC draw. Unit needs RC drain pan and adapter replaced also needs drain tube replaced causing the above issue."

20. On June 8, 2022, Dan Marc performed the above repair replacing the drain tube, pan drip (drip pan) and adapter and "cleared out build up in the drain tube in the RC due to water in the RC." Immediately thereafter, Plaintiff was unable to open the freezer door and on June 15, 2022 the Dan Marc repair person made another service visit and "found ice build under the FC [Freezer door], cleared same." Plaintiff made an out-of-pocket payment of $482.76 for the June 8 and June 15 visits and repair for parts and labor.

21. In or around October 2022 the Refrigerator ceased cooling. In arriving at a diagnosis, the Dan Marc service representative explained to Plaintiff that the evaporator for this KitchenAid product was "poorly made and leaked water because the joints in the evaporator unit were not properly sealed" which required a new 'sealed' evaporator unit which included a new defroster harness." The service representative also stated that problems with this unit resulted in tiny holes developing in the sealed part of the cooling system which may be impossible to find and repair causing leak of refrigerant.

22. Dan Marc further informed Plaintiff that although there was a full warranty covering parts and labor for the Unit up to five years from the purchase date of April 2014, only parts were covered under the warranty for 10 years from purchase.

23. After a week waiting for the new (and still defective) evaporator unit, Dan Marc returned and replaced the evaporator unit at a cost to Plaintiff of $746.32 including labor of $570.00, $129.95 for the service call and sales tax of $46.37. The repair person announced that this new evaporator unit should resolve the problem and that it may take up to 12 hours for the unit to become adequately cooled.

24. However, the Refrigerator failed to cool at all, and the repair person had to come back yet another time, at which time he claimed that he fixed a possible leaky connection on the evaporator unit, and again assuring Plaintiff that he believed that the problem was resolved. Again, the Unit failed to cool at all.

25. Having been without refrigeration for several weeks and at risk of further food spoilage, Plaintiff had to purchase a replacement for the defective Unit – a new GE Profile unit at a cost of $3438.23. *See* Ferguson Invoice dated 11/16/22, attached as Ex. 3 hereto.

**Background**

26. Whirlpool manufactures four styles of refrigerators: 1) Top Freezer; 2) Bottom Freezer; 3) Side-by-Side; and 4) French Door. These refrigerators are sold in retailers including but not limited to Best Buy, P.C. Richard & Son, and Home Depot at prices ranging from approximately $580 to approximately $3,600.

27. However, as a result of defective manufacturing, the dual evaporators in the refrigerators, as well as other parts of the sealed refrigeration unit, are prone to develop leaks, resulting in low refrigerant charge. As a result, the temperatures in the refrigerator and freezer sections become much warmer than the cold temperatures needed to fulfill the purposes of keeping food refrigerated or frozen, respectively.

28. The defect manifests during the expected useful life of the Class Refrigerators, both inside and outside of the warranty periods. As the warmer temperatures caused by the Defect prevent the refrigerator and freezer sections from performing their intended functions, the defect renders the Class Refrigerators useless to Plaintiff and Class Members during their expected useful life, and unfit for the ordinary purposes for which they are sold.

29. The Defect has caused and will continue to cause Plaintiff and Class Members to purchase costly repairs and/or replacements for the defective refrigerators.

30. The Defect is uniform among all Class Refrigerators owned by Plaintiff and Class Members.

31. Plaintiff and Class Members reasonably expected that the Class Refrigerators they purchased would operate according to their intended purposes, and that Whirlpool would disclose any known defects prior to or at the time of sale.

32. Whirlpool knew of the Defect prior to Plaintiff's purchase of his Refrigerator, as evidenced by the March 2014 TSP that was sent out to dealers. Whirlpool took no steps to provide notice to potential customers about the known defect, knowingly omitting the defect from the information supplied to potential customers and misrepresenting that the Class Refrigerators were fit to perform their intended functions throughout the span of their expected useful lives.

### Tolling of the Statutes of Limitations

33. As a result of Whirlpool's active and knowing concealment of the defect, Plaintiff and Class Members could not have reasonably discovered the Defect until it manifested in their refrigerators. Therefore, any applicable statutes of limitations are tolled.

34. In July 2016, Dan Marc appliance communicated the representation made by Whirlpool that any problem with the evaporator had been resolved and it was not until May of 2022 that Plaintiff learned that the Defect continued to exist with each replacement component. The claim herein did not accrue until May 2022 at the time Plaintiff, after diligently pursuing repair and being assured of resolution by Whirlpool's agent, learned that the Class Refrigerators affected had an unrepairable Defect and, as a result, the statute of limitations was equitably tolled.

35. In addition, Whirlpool's extended warranty covering parts and labor up to five year and parts up to 10 years from date of purchase remained in effect, and any statute of limitations does not begin to run until expiration of this extended warranty that Whirlpool issued.

36. Whirlpool has a continuing duty to inform Class Members of the Defect, and that the repairs for the Defect, should it manifest, are very expensive.

8

**Class Action Allegations**

37. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class and a Subclass defined as:

> All persons who, at any time following the issuance March 2014 TSP, purchased a new Whirlpool Class Refrigerator containing the Defect. (the "Class" or the "Nationwide Class")
>
> Alternatively, Plaintiff proposes the following state-specific subclass:
> All persons in New Jersey who, at any time following the issuance March 2014 TSP, purchased a new Whirlpool Class Refrigerator containing the Defect. (the "New Jersey Class" or the "Subclass"):

38. Excluded from the Classes are the Defendant herein, any person, firm, trust, corporation, officer, director, or other individual or entity in which the defendant has a controlling interest or which is related to or affiliated with the Defendant, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

39. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. The precise number of Class Members is unknown to plaintiff at this time, but the names and addresses of the Class Members can be ascertained from the books and records of Whirlpool or its agents. Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

40. Plaintiff will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intend to prosecute this action vigorously.

41. Plaintiff's claims are typical of the claims of the other members of the Classes because Plaintiff's and all the Class members' damages arise from and were caused by the same false and misleading representations made by or chargeable to Defendant. Plaintiff does not have any interests antagonistic to, or in conflict with, the Classes.

42. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class Members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

43. Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes. Among the questions of law and fact common to the Classes are:

   a. Whether the widespread failure or significant problems with the evaporators in the Class Refrigerators result from use of defective materials, workmanship, and/or design;

   b. Whether Whirlpool knew or had reason to know of the prevalence of such defects while manufacturing, marketing, and selling the Class Refrigerators, and before any related warranties expired;

   c. Whether consumers could reasonably have discovered the defects prior to purchasing the Class Refrigerators;

10

  d. Whether the presence of such defects at the time of sale constitutes a breach of Whirlpool's express warranties;

  e. Whether the presence of such defects constitutes a breach of the implied warranty of merchantability;

  f. Whether Whirlpool engaged in deceptive practices by marketing and selling refrigerators that it knew or had reason to know contained defective evaporators;

  g. Whether Whirlpool was negligent in manufacturing, marketing, and selling refrigerators that contained evaporators;

  h. Whether Whirlpool was unjustly enriched by manufacturing, marketing, and selling refrigerators that contained evaporators; and

  i. Whether Plaintiff and Class Members suffered damages as a result of the transgressions described herein.

## CLAIMS FOR RELIEF

## COUNT I

## BREACH OF EXPRESS WARRANTY

44. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein. This allegation is brought on behalf of the Nationwide Class and the New Jersey State Class.

45. The KitchenAid Refrigerator Warranty for Plaintiff's Whirlpool Refrigerator states that, when the refrigerator is operated and maintained according to instructions attached to or furnished with the product:

    a. For one year from the date of purchase, Whirlpool "will pay for factory specified parts and repair labor to correct defects in materials or workmanship that existed when this major appliance was purchased."

    b. From the second through the fifth year from purchase, Whirlpool "will pay for factory specified parts and repair labor for the following components to correct defects in materials or workmanship in the sealed refrigeration system that existed when this major appliance was purchased: compressor, **evaporator**, condenser, dryer, and connecting tubing."

    c. From the sixth through the tenth year from purchase, Whirlpool "will pay for factory specified parts [only] for the following components to correct defects in materials or workmanship in the sealed refrigeration system that existed when this major appliance was purchased: compressor, **evaporator**, condenser, dryer, and connecting tubing."

46. Whirlpool limits its extended warranty to all repairs to the evaporator to only five years and to parts only and no labor between year 5 and year 10 from purchase, despite knowing, as evidenced by the March 2014 TSP and October 2015 TSP, that the evaporator is defective and would likely fail.

47. As set forth hereinabove, Plaintiff provided to Whirlpool sufficient notice and opportunity to repair the Defect prior to commencing this action.

12

## COUNT II

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

48. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein. This allegation is brought on behalf of the Nationwide Class and the New Jersey State Class.

49. Whirlpool is a merchant who regularly engages in the manufacture, marketing, and distribution of refrigerators. Plaintiff and Class Members purchased products which were in that category. By operation of law, Whirlpool impliedly warranted to Plaintiff and Class Members that the products were fit for their intended use. Whirlpool's express warranty was extended to 10 years from the date of the purchase and was still in effect at the time Plaintiff was damaged by the existence of the Defect.

50. Contrary to the implied warranties, the Class Refrigerators were not fit for their intended use due to their defective nature of their evaporators. Whirlpool knew or had reason to know of the defective nature of the evaporators prior to issuing the implied warranties.

51. While the defective manufacturing was present at the time the warranties were issued, Plaintiff and Class Members could not have discovered it at that time. At the time of purchase, Plaintiff and Class Members reasonably expected their Class Refrigerators to be fit for their intended use, and they did not receive the goods they bargained for. Had they known of the defective manufacturing, they would not have made the purchases.

52. Plaintiff and Class Members used the Class Refrigerators in the ordinary manner for which they were intended. The products were not altered, and no action by Plaintiff and Class Members caused nor contributed to the defects.

53. In the instances where Class Members did not purchase the Class Refrigerators directly from Defendant, they are still the intended beneficiaries of the implied warranties, as the end users whom the retailers purchased the products to sell to and are therefore entitled to enforce the implied warranties against Defendant.

54. Pursuant to the Magnuson-Moss Warranty Act, Defendant is prohibited from disclaiming or limiting the implied warranty of merchantability so as to not cover the defective evaporators.

55. As a result of Defendant's breach of the implied warranty of merchantability, Plaintiff and Class members suffered damages of an amount to be determined at trial.

## COUNT III

### UNJUST ENRICHMENT

56. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein. This allegation is brought on behalf of the Nationwide Class and the New Jersey State Class.

57. Defendant was unjustly enriched in its distribution of defective products, at the expense of Plaintiff and Class Members. Defendant received a benefit in the form of the profits from the sales of the defective products, conferred on them by Plaintiff and Class Members. In the instances where Class Members did not purchase the defective products directly from Defendant, they are still the ultimate purchasers of the units from Defendant's retailers, as the end purchasers whom the retailers sold the products to in turn.

58. Given the defective nature of the Whirlpool Class Refrigerators, it would be unjust and inequitable for Defendant to retain the benefits conferred. As the products were unfit for their intended use, Plaintiff and Class Members did not receive the goods they bargained for.

59. Defendant knowingly and willingly accepted and enjoyed the benefits of the sales.

60. Plaintiff and Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

## COUNT IV

## COMMON LAW FRAUD

61. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein. This Count is brought on behalf of the Nationwide Class and the New Jersey State Class.

62. The conduct and actions alleged and described above constitute common law fraud by way of misrepresentations, concealment and omissions of material facts made by Defendant in inducing Plaintiff and the Class and Subclass Members to purchase refrigerators with the defect.

63. Defendant, upon information and belief, made the above-described misrepresentations, concealment, and omissions of material facts to all Class and Subclass Members concerning the Defect. Whirlpool markets its Class Refrigerators in such ways as to convey top-tier product quality. However, the Defect renders the Class Refrigerators unable to perform their intended functions. As evidenced above, Whirlpool was aware that the Class Refrigerators suffered from the Defect and could not keep food and drink sufficiently cool in the refrigerator compartment and food and drink frozen in the freezer compartment. Whirlpool issued

technical service pointers to dealers of Whirlpool Class Refrigerators, not consumers, in March 2014 regarding the Defect, demonstrating Defendant clearly knew about the Defect.

64. Defendant intended that Plaintiff and the other members of the Class and Subclass rely upon the above-described uniform misrepresentations, concealment, and omissions.

65. Defendant's misrepresentations, concealments and omissions concerning the Defect were material to Plaintiff's and other Class and Subclass Members' decisions to purchase the refrigerators. In fact, the representations and omissions regarding the Defect were so fundamental to plaintiff's and Class and Subclass Members' decision-making process that they would not have purchased the Class Refrigerators had they known that the Class Refrigerators could not keep food and drink sufficiently cool in the refrigerator compartment and food and drink frozen in the freezer compartment.

66. Plaintiff and other Class and Subclass Members justifiably relied upon Defendant's misrepresentations, concealment and omissions to their damage and detriment.

67. Plaintiff and the Class and Subclass suffered the damage described in this complaint as a proximate result thereof

68. Defendant's conduct was willful, wanton, and reckless. Based on the deliberately dishonest nature of Defendant's conduct, which was directed at the Class and Subclass, Defendant should also be held liable to the Class and Subclass for punitive damages in an amount to be determined at trial.

## COUNT VI

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

69. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein. This claim is brought individually under the laws of New Jersey and on behalf of all Class members of the proposed New Jersey State Subclass.

70. The marketing and branding of the Whirlpool refrigerators are advertisements within the meaning of N.J. Stat. Ann. § 56:8-1(a).

71. The Whirlpool Class Refrigerators are merchandise within the meaning of N.J. Stat. Ann. § 56:8-1(c).

72. Defendant is a "person" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

73. N.J. Stat. Ann. § 56:8-2 provides, in relevant part:

"The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice…"

74. Defendant knew or had reason to know of the defective nature of the subject Class Refrigerator products prior to the branding, marketing, and sales of those products. Defendant therefore knowingly and unconscionably concealed, misrepresented, and omitted material facts with the intent that consumers would rely on such concealments, misrepresentations, and omissions in purchasing the defective products.

17

75. Defendant's concealments, misrepresentations, and omissions were material because Plaintiff and Class Members would not have purchased the subject Class Refrigerators had they known of their defective nature.

76. As a result of Defendant's violation of the NJCFA, Plaintiff suffered ascertainable losses including having to purchase a new functioning refrigerator, loss of use of the Whirlpool Refrigerator and spoilage.

77. Pursuant to N.J. Stat. Ann. § 56:8-2.11, Defendant is liable for full refunds of all moneys acquired by means of their unlawful branding, marketing, and sales, as well as treble damages. Plaintiff and the Class members represented in this claim seek all relief dictated by this law, in addition to such other relief as is deemed just and proper.

## COUNT VII

### VIOLATION OF THE TRUTH-IN-CONSUMER CONTRACT, WARRANTY AND NOTICE ACT (TCCWNA)

78. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein. This claim is brought individually under the laws of New Jersey and on behalf of all Class Members of the proposed New Jersey State Subclass.

79. Plaintiff and Subclass Members are consumers within the meaning of N.J. Stat. Ann. § 56:12-15.

80. Defendant is a seller within the meaning of N.J. Stat. Ann. § 56:12-15 and -17.

81. N.J. Stat. Ann. § 56:12-15 provides in relevant part that:

"[N]o seller, creditor, lender or bailee may offer or enter into any written consumer contract or give or display any notice which includes any provision that violates a clearly established right of the consumer or responsibility of the seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer

is made or the consumer contract is signed or the warranty, notice or sign is given or displayed."

82. The New Jersey Consumer Fraud Act establishes clear legal rights in its protection of consumers and/or clear responsibilities for sellers to not engage in any misrepresentations or otherwise deceptive or unconscionable practices in selling to consumers. By violating the New Jersey Consumer Fraud Act, as described above, Defendant has also violated TCCWNA.

83. N.J. Stat. Ann. § 56:12-17 provides for statutory damages of not less than $100 for violations of TCCWNA. As a result of Defendant's violations, Plaintiff and Subclass Members are entitled to these statutory damages in addition to such other relief as is deemed just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class and Subclass Members, respectfully requests that this Court grant the following relief:

A. Allow this action to proceed as a class action under Rule 23 for all claims alleged, designate Plaintiff as the representative of the classes and his undersigned counsel as counsel for the class;

B. Enter judgment against Defendant, jointly and severally, and in favor of Plaintiff and each member of the Classes, in the amount of actual and compensatory damages, and pre-and post-judgment interest as allowed by law and enjoin Defendant from future violations;

C. Award all actual, general, special, incidental, statutory, treble, punitive, and consequential damages to which plaintiff and members of the Classes are entitled;

D. Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Class Refrigerators and to

extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class Members with appropriate curative notice regarding the existence and cause of the design defect;

  E. Award to Plaintiff the attorney's fees, expert fees and the costs incurred in this litigation; and

  F. Grant plaintiff such further relief that this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Dated: January 30, 2023

            **KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**

            _____
            Gary S. Graifman
            135 Chestnut Ridge Road
            Montvale, New Jersey 07645
            Tel: (201) 391-7000

            ***Attorneys for Plaintiff***